UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BETTE J. FOSTER,


                              Plaintiff,

                                                        <u>DECISION AND ORDER</u>

                                                        09-CV-6569L


                   v.


THE HUMANE SOCIETY OF ROCHESTER
AND MONROE COUNTY, INC.,
LOLLYPOP FARM,



                              Defendants.
_____


        Plaintiff, Bette J. Foster, brings this action against her former employer, the Humane Society

of Rochester and Monroe County, Inc. ("Humane Society"), alleging that her employment was

unlawfully terminated on account of her age and sex, and in retaliation for her having complained

about unlawful employment practices.  The Humane Society has moved to dismiss the complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff has cross-moved for

leave to amend and correct the complaint.


                              **BACKGROUND**

        The complaint alleges the following facts, which for purposes of deciding defendant's motion

to dismiss are assumed to be true.

The Humane Society is a not-for-profit corporation with its principal place of business in Monroe County, New York. Plaintiff, who was born in 1963, began working for the Humane Society in September 2008, as Manager of Resource Development. Her immediate supervisor was Catherine Wright, the Humane Society's Director of Development. Part of plaintiff's job involved soliciting donations, and fostering a relationship with donors, for Lollypop Farm, a center run by the Humane Society that provides pet adoption and other animal-related services.

According to the complaint, at some point during her employment, plaintiff became aware that the Humane Society's president, Alice Calabrese Smith (referred to in plaintiff's papers as "President Alice"), who was married, was having an affair with one of defendant's largest donors ("donor"), who was also married. Plaintiff alleges that she "was burdened with the responsibility to keep President Alice's relationship [with the donor] in hiding." Complaint ¶ 14. It is not clear from the complaint whether Smith expressly directed plaintiff to keep that relationship a secret or whether plaintiff simply assumed that this was expected of her, but she alleges that she "did not tell her peers or her supervisor," or anyone else about the nature of Smith's relationship with the donor. *Id.*

Plaintiff alleges that the donor "was in constant contact with Plaintiff," and that he continually meddled in matters for which plaintiff was responsible, offering unsolicited opinions about how various events should be run and how plaintiff should perform her job. *Id.* ¶ 16. If plaintiff disagreed with the donor's suggestions, or tried to limit his involvement, Smith would override plaintiff and let the donor have his way. *Id.* ¶ 21.

Plaintiff also had some difficulties with the Humane Society's events coordinator, Debra Calandrillo, who reported directly to plaintiff. Plaintiff alleges that Calandrillo "took issue with Plaintiff," and that she "ha[d] numerous issues even prior to Plaintiff's arrival." *Id.* ¶ 26. It is not clear from the complaint what sort of "issues" Calandrillo is alleged to have had, but plaintiff alleges that although she "complained to her supervisor [presumably meaning Wright] numerous times concerning Coordinator Calandrillo's behavior, however, no remedial action was taken." *Id.* ¶ 27.

Plaintiff alleges that at some point, Calandrillo told plaintiff that Calandrillo was "going to threaten [the donor] that if he did not give her the funding and resources for a certain fund raising event that she would tell his wife about his relationship with President Alice." *Id.* ¶ 29. On May 8, 2009, plaintiff informed Smith about what Calandrillo had told her.

On May 11, 2009, plaintiff told Wright that she was "still having numerous issues with Coordinator Calandrillo." *Id.* Wright suggested that the two of them meet with Linda Baird, who is identified in the complaint as "the VP at the Democrat & Chronicle" newspaper, who "is renown [sic] in the community for superior management." *Id.* ¶ 32. At a May 13, 2009 meeting attended by plaintiff, Wright and Baird, Baird allegedly suggested that Calandrillo "be put under performance review and be given conditions of employment, which, to Plaintiff's knowledge, never happened." *Id.* ¶ 34.

At that same meeting, Wright allegedly told plaintiff that President Smith "was concerned about plaintiff's performance." *Id.* Plaintiff states that she "was given a plan of action, which was later outlined in an Interoffice Memorandum" by Wright. *Id.* ¶ 35. That memorandum, dated May

20, 2009, set forth certain goals for plaintiff, such as raising certain amounts of money in donations and cultivating new donors. Dkt. #2 Ex. A.[1]

On May 29, 2009, plaintiff told Wright what she knew about the relationship between Smith and the donor, and told her how their relationship was adversely affecting her ability to perform her job. Plaintiff expressed concern that Smith might fire her "because of the situation." *Id.* ¶¶ 36-38.

On May 30, plaintiff sent an email to Wright in which she stated, *inter alia*, that "it is beginning to feel like a hostile work environment." Dkt. #2 Ex. A. She stated that there were "three issues that make it a hostile environment ... ." The first two of those involved plaintiff's ongoing problems with Calandrillo. The third related to Smith's relationship with the donor. Plaintiff complained to Wright that "if Alice is having 'relationships' with these donors, they don't listen to me – they go directly to Alice." She added that this "directly impact[ed her] daily work and [her] schedule" and that "[d]ecisions are made that are not in the best interest of the organization – specifically where money is spent and how employees are managed." *Id.*

---

[1]A copy of that memorandum was attached to plaintiff's complaint filed with the Equal Employment Opportunity Commission ("EEOC"), a copy of which has been submitted by defendant. Since plaintiff's complaint in this action references here EEOC charge, *see* Complaint ¶ 2, the Court may consider it on a motion to dismiss. *See Gee v. Metaldyne Corp.*, No. 1:08-cv-0097, 2008 WL 4936865, at *1 (S.D.Ind. Nov. 14, 2008); *McFagdon v. Fresh Market, Inc.*, No. 05-2151, 2005 WL 2768996, at *2 n.1 (W.D.Tenn. Oct. 21, 2005). The Court cites it here mostly to provide additional background, however, and it does not play any significant role in the Court's decision.

On June 3, 2009, plaintiff was called into Wright's office and "told that her services were no longer needed." *Id.* ¶ 40. The complaint does not state whether plaintiff was given a reason for that decision.

Plaintiff filed an EEOC charge on August 10, 2009, alleging age and sex discrimination, and unlawful retaliation. Ten days later, the EEOC dismissed the charge, with a one-line explanation: "No Prima Facie Case, self defeating." Dkt. #2 Ex.B.

Plaintiff filed the complaint in this action on November 10, 2009. The complaint asserts eight causes of action: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (2) retaliation for complaining about age discrimination, in violation of the ADEA; (3) age discrimination in violation of the New York Human Rights Law ("HRL"), N .Y. Exec. L. § 296 *et seq.*; (4) retaliation for complaining about age discrimination, in violation of the HRL; (5) sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (6) sex discrimination in violation of the HRL; (7) retaliation for complaining about sex discrimination, in violation of Title VII; and (8) retaliation for complaining about sex discrimination, in violation of the HRL. She seeks compensatory and punitive damages in an undetermined amount.

In her cross-motion to amend the complaint, plaintiff states that she is withdrawing her second and fourth causes of action, *i.e.*, the retaliation claims relating to age discrimination. The Court dismissed those claims at oral argument on the motion on July 7, 2010. Thus, plaintiff's only retaliation claims are based on her allegation that she was retaliated against for complaining about sex discrimination.

**DISCUSSION**

**I. Motions to Dismiss under Rule 12(b)(6)**

In deciding whether to grant a motion to dismiss for failure to state a claim, the court must accept the factual allegations contained in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Kuck v. Danaher*, 600 F.3d 159, 166 (2d Cir. 2010). At the same time, however, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, ___U.S. ___, 129 S.Ct. 1937, 1949 (2009).

Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570. A "plausible" entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the "conclusory" from the "factual," and the "factually neutral" from the "factually suggestive." *Id.* at 557 n. 5. *See also Iqbal*, 129 S.Ct. at 1950 ("only a complaint that states a plausible claim for relief survives a motion to dismiss"); *accord Ruston v. Town Bd. for Town of Skaneateles*, ___ F.3d ___, 2010 WL 2680644, at *2 (2d Cir. 2010).

Taken together, *Twombly* and *Iqbal* represent a significant shift with respect to the standards applicable to Rule 12(b)(6) motions. Prior to *Twombly*, federal courts would not dismiss a complaint for failure to state a claim "unless it appear[ed] beyond doubt that the plaintiff c[ould] prove no set of facts in support of h[er] claim which would entitle h[er] to relief." *See, e.g., Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir.

2003)).  That was the standard applied by the Second Circuit in its decision in *Twombly*, which was reversed by the Supreme Court.  *See Twombly v. Bell Atlantic Corp.*, 425 F.3d 99, 106 (2d Cir. 2005).  In its *Twombly* decision, the Supreme Court stated that the "no set of facts" language, which was taken from a phrase used in *Conley v. Gibson*, 355 U.S. 41 (1957), had "been questioned, criticized, and explained away long enough," and had "earned its retirement."  *Twombly*, 550 U.S. at 562-63.

Twombly was an antitrust case, but in its decision two years later in *Iqbal*, the Court made clear that the "plausibility" pleading standard set forth in *Twombly* applies to civil cases generally.  *See Iqbal*, 129 S.Ct. at 1949, 1953.  Thus, that standard is by now well established.

Remarkably, however, in her memorandum of law in opposition to defendant's motion to dismiss, plaintiff relies on the now-"retired" "no set of facts" pleading standard..  *See* Dkt. #6-2 at 6.  She also quotes the Second Circuit's *Twombly* decision, but she does not cite the Supreme Court's decision in *Twombly*, which reversed the very decision cited by plaintiff.  There is no indication whatsoever in plaintiff's brief that the Second Circuit's *Twombly* decision is no longer good law.

Regardless of whether plaintiff's counsel was aware of this when she filed her brief, the Supreme Court has made clear that it is not enough simply to recite the elements of a claim, and to allege the existence of those elements in general, conclusory fashion.  Rather, a complaint must contain enough "factual amplification ... to render a claim plausible."  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).  In addition, in assessing the viability of a complaint, the court is free to "identify[] pleadings

that, because they are no more than conclusions, are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S.Ct. at 1951).

## II. Discrimination and Retaliation Claims under the ADEA, Title VII, and HRL

Claims for age or sex discrimination, or for retaliation, under the ADEA, Title VII, and the HRL, are all analyzed using the same basic framework. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003); *Bielski v. Green*, 674 F.Supp.2d 414, 420 (W.D.N.Y. 2009); *Kourofsky v. Genencor Int'l, Inc.*, 459 F.Supp.2d 206, 209 (W.D.N.Y. 2006). Under the burden-shifting paradigm laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981), a plaintiff alleging claims under these statutes must first establish a prima facie case, and, if the employer succeeds in rebutting the plaintiff's proof by presenting evidence that the plaintiff was terminated for a legitimate, lawful reason, the plaintiff must present evidence from which a factfinder could conclude that unlawful animus was the real reason for the termination. *See Hall v. Parker Hannifan Corp.*, ___ F.Supp.2d ___, 2009 WL 4406145, at *2 (W.D.N.Y. 2009).

On a motion to dismiss, however, it is unnecessary to go through that entire analysis. In *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), the Supreme Court held that there is no heightened pleading requirement for Title VII cases, and that an employment discrimination complaint need not allege specific facts that establish a prima facie case of discrimination. *Id.* at 514. Instead, the Court stated, under Rule 8 of the Federal Rules of Civil Procedure, an employment discrimination complaint "must include only a short and plain statement of the claim ... [that] give[s]

the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512.

In *Twombly*, the Supreme Court explicitly affirmed the *Swierkiewicz* pleading standard for employment discrimination claims. *See* 550 U.S. at 547 ("This analysis does not run counter to *Swierkiewicz* ... . Here, the Court is not requiring heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"). "Accordingly, to overcome a motion to dismiss, a complaint in a Title VII case need not establish a prima facie case of employment discrimination, but the complaint must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Morales v. Long Island R.R. Co.*, No. 09 CV 8714, 2010 WL 1948606, at *3 (S.D.N.Y. May 14, 2010).

In short, plaintiff must allege facts making it at least plausible that her age, gender or complaints about unlawful discrimination were a motivating factor in her employer's decision to terminate her. *See Ruston*, 2010 WL 2680644, at *3 ("Under *Iqbal*, factual allegations must be sufficient to support necessary legal conclusions," and must "plausibly suggest an entitlement to relief"); *see also Arista Records*, 604 F.3d at 120-21 (although *Twombly* and *Iqbal* did not impose a heightened pleading standard in employment discrimination cases, enough facts must still be pleaded to make plaintiff's claim plausible).

### III. Age Discrimination

With respect to her claims of age discrimination, the original complaint is virtually devoid of facts indicating that plaintiff's age had anything to do with her termination, other than the fact that

plaintiff was over forty years of age when she was fired.  If the Court were to consider only the original complaint, plaintiff's age discrimination claim could simply be dismissed out of hand.

Plaintiff has submitted a proposed amended complaint which appears to be identical to her original complaint, except that it adds certain factual allegations in support of the age discrimination claim.  Since the Court must decide whether to grant plaintiff leave to file the amended complaint, I have considered those allegations.  Nevertheless, even viewing them in the light most favorable to plaintiff, I find that the proposed amended complaint likewise fails to state a plausible claim of age discrimination.

In the proposed amended complaint, plaintiff alleges that "[d]efendant had a practice of firing upper level management employees over the age of forty (40)."  Dkt. #7 ¶ 41.  Specifically, she alleges that two other women over forty were fired in February and summer 2009.  *Id.* ¶ 42.  Plaintiff also alleges that after she was terminated, she was replaced by a woman in her early thirties.

The bare allegations that two other employees over forty were fired in 2009, and that defendant has a practice of firing older employees, are not enough to make out an age claim.  Even under the pre-*Twombly* pleading standards, it is doubtful that such allegations would have sufficed to state a claim.  Clearly those allegations are insufficient in light of *Twombly* and *Iqbal*.

Assuming the truth of plaintiff's allegation that two other employees over age forty were dismissed in 2009, that does not suggest that plaintiff was let go on account of her age.  For one thing, there are no facts alleged concerning the circumstances surrounding the termination of those other two employees.  There is no indication of who made the decision to fire them, what if any reason was given for their termination, or whether they were replaced by younger employees.

Similarly, the allegation about defendant's "practice" of firing older upper-level management employees is utterly conclusory. As stated, the Court need not accept the truth of such allegations. *Ruston*, 2010 WL 2680644, at *3.

In addition, it is not enough for plaintiff simply to point to the firing of two other employees over age forty. She must still allege facts indicating that age was a motivating factor in *her* termination. She has not done so.[2]

Virtually the only allegation that plaintiff has made in that regard is her allegation in the proposed amended complaint that she was replaced by a woman in her early thirties. That is not enough to give rise to an age discrimination claim, however. If it were, then any time an ADEA-covered employer terminated an employee over age forty, the employer would be unable to replace that employee with someone younger, without exposing itself to potential liability for age discrimination. That is not the law. *See Mandengue v. ADT Security Systems, Inc.*, No. 09-3103,

---

[2]Plaintiff does not appear to assert a "pattern and practice" claim, nor would her allegations support such a claim. A "pattern and practice" claim is a type of disparate treatment claim that alleges widespread acts of intentional discrimination against a class of individuals rather than isolated or sporadic incidents of discrimination against a single individual. *See Robinson v. MetroNorth Commuter R.R. Co.*, 267 F.3d 147, 158 (2d Cir. 2001), *cert. denied*, 535 U.S. 951 (2002).

There is some authority from within this circuit that a plaintiff cannot bring a "pattern and practice" claim for age discrimination outside of the class action context. *See Rubinow v. Ingelheim*, No. 3:08-cv-1697, 2010 WL 1882320, at *3 (D.Conn. May 10, 2010) (collecting cases). In any event, the allegation that two other employees within the protected age group were terminated is not enough to support such a claim. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 878-79 and n.11 (1984) (evidence of "two or three instances of discrimination" were not "sufficient to establish a general policy"); *Krish v. Connecticut Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*, 607 F.Supp.2d 324, 332 (D.Conn. 2009) ("plaintiff's allegations of systematic firing, even supported by allegations of three confirmatory instances, without more, does not render plausible plaintiffs' allegations of a pattern or practice claim").

2010 WL 2365463, at *5 (D.Md. June 4, 2010) (plaintiff's assertion that she was replaced by a "significantly younger employee" was insufficient to state a clam for relief) (citing *Twombly*, 550 U.S. at 555); *Liburd v. Bronx Lebanon Hosp. Center*, No. 07 Civ. 11316, 2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008) ("Although Liburd alleges that she was replaced by a younger employee, this, without more, is not enough to survive a motion to dismiss").[3]


## IV. Sex Discrimination

Plaintiff's claim of sex discrimination under Title VII is no better pleaded than her age discrimination claim. The allegations in the complaint do not give any indication that plaintiff's termination, or any of the events leading up to her termination, had anything to do with the fact that she is a woman.

It appears from the complaint and plaintiff's other papers that her Title VII claim is based upon a theory of "gender-based hostile work environment ... ." Plaintiff's Mem. of Law (Dkt. #6-2) at 11.[4] The facts alleged here do not support such a claim.

---

[3]The specific allegation about plaintiff's replacement is that "defendant replaced Plaintiff with a 30 - 35 year old woman who described the new employee as having 'long blond hair' and being 'a real piece of eye candy for the boys.'" Dkt. #7 ¶ 44. The allegations about her replacement's physical appearance add nothing to plaintiff's claim. Aside from the fact that it is impossible to tell from this allegation who described the new employee that way, no "boys" are identified or even mentioned elsewhere in the complaint, and it is simply not apparent how any of this is supposed to relate to plaintiff's age discrimination claim.

[4]Plaintiff also states in her memorandum of law that her Title VII claim "is **not** for a gender-based discriminatory action ... ." Dkt. #6-2 at 11. Thus, she does not appear to assert that she was terminated on account of her sex, although even if she did, such an assertion would not be supported by the facts alleged in the complaint.

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, ... the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)). "For liability to attach, the employer must also be responsible for the conduct at issue." *Gregory*, 243 F.3d at 692 n. 3.

Even viewed in the light most favorable to plaintiff, the facts alleged here do not show severe, pervasive conduct that created an objectively hostile or abusive working environment. The complaint indicates that plaintiff had some difficulties with Calandrillo, and that Smith's alleged relationship with a donor made plaintiff's job somewhat more difficult or unpleasant, but it does not show that her working environment would have been perceived by a reasonable person as hostile or abusive, or "permeated with discriminatory intimidation, ridicule, and insult ... ." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Plaintiff alleges that Smith allowed the donor to make decisions about, and otherwise interfere in, matters that were properly within plaintiff's area of responsibility. She also alleges that she "had to be extremely flexible with her schedule just for [the donor] and his requests." *Id.* ¶ 23. Plaintiff contends that on one occasion, Smith "suggested that Plaintiff plan [the donor]'s personal assistant['s] bachelorette party," although it does not appear that plaintiff ever did so. *Id.* ¶ 18. In

addition, in general plaintiff alleges that she found it difficult, uncomfortable, or burdensome to maintain secrecy about the nature of the relationship between Smith and the donor.

With respect to Calandrillo, plaintiff alleges, in mostly vague terms, that she and Calandrillo had "issues," and that despite plaintiff's complaints about Calandrillo, nothing was ever done to rectify those problems. She also alleges, in equally nonspecific fashion, that Smith and Wright "would undermine [plaintiff's] management of Coordinator Calandrillo." Complaint ¶ 28.

Those allegations may well indicate that plaintiff's working conditions, or her relationships with her supervisors and her subordinates, were less than ideal. Many employment situations are unpleasant. This fact, though, does not rise to the level of a "hostile" environment. "Title VII's standard for redress is a hostile work environment, not an unpleasant one." *Nettle v. Central Okla. American Indian Health Council, Inc.*, 334 Fed.Appx. 914, 925-26 (10th Cir. 2009). *See*, *e.g.*, *Devin v. Schwan's Home Serv., Inc.*, 491 F.3d 778, 788 (8th Cir. 2007) (finding that plaintiff's allegations "amount[ed] to a frustrating work environment rather than an objectively hostile work environment"); *Smith v. Naples Community Hosp., Inc.*, No. 208-CV-952, 2010 WL 2026163, at *7 (M.D.Fla. May 20, 2010) ("much of the conduct plaintiff alleges was harassment was in fact annoyances and communication issues that do not come close to creating a hostile work environment").

The most significant flaw in this claim, however, is that plaintiff's allegations do not indicate that her gender was causally related to the hostility that she allegedly faced. There must be a causal connection. The Second Circuit "ha[s] explained that 'it is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct

occurred because of her sex.'" *La Grande v. Decrescente Distributing Co., Inc.*, No. 08-3010-cv, 2010 WL 1049320, at *2 (2d Cir. 2010) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)) (additional internal quotation marks and alterations omitted). *See also Gregory v. Daly*, 243 F.3d 687, 694 (2d Cir. 2001) (requiring an "allegation of factual circumstances that permit the inference that plaintiff was subjected to a hostile work environment because of her sex" in order to survive a motion to dismiss); *Adamson v. Multi Community Diversified Services, Inc.*, 514 F.3d 1136, 1153 (10th Cir. 2008) ("Title VII only prohibits discrimination on the basis of certain, invidious factors. Employers are free to terminate at-will employees for any other reason-however unfair, unwise, or even erroneous-so long as it is not unlawful").[5]

In support of her claim, plaintiff alleges that the illicit affair between Smith and the donor made it difficult for her to do her job. In particular, she states that Smith's accommodation of the donor's wishes with respect to various matters concerning Lollypop Farm amounted to prohibited "sexual favoritism." Plaintiff relies on an EEOC policy guidance stating that "sexual favoritism in the workplace which adversely affects the employment opportunities of third parties may take the form of implicit 'quid pro quo' harassment and/or 'hostile work environment' harassment." EEOC Policy Guidance on Employer Liability under Title VII for Sexual Favoritism, N-915.048 (Jan. 12, 1990), *available at* http://www.eeoc.gov/policy/docs/sexualfavor.html ("EEOC Policy Guidance").

In fact, the EEOC Policy Guidance does not help plaintiff's claim. The EEOC went on to state in that document that "favoritism based upon coerced sexual conduct may constitute quid pro quo harassment," and that "widespread favoritism [based upon the granting of sexual favors] may

---

[5]There is no allegation here that plaintiff had an employment contract, or that she was anything other than an at-will employee.

- 15 -

constitute hostile environment harassment" by "convey[ing] that the managers view women as 'sexual playthings,' thereby creating an atmosphere that is demeaning to women." Neither situation has been alleged here.

Instead, the facts alleged in the complaint are closer to the example given by the EEOC of what is *not* prohibited:

> An isolated instance of favoritism toward a "paramour" (or a spouse, or a friend) may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders. A female charging party who is denied an employment benefit because of such sexual favoritism would not have been treated more favorably had she been a man nor, conversely, was she treated less favorably because she was a woman.

EEOC Policy Guidance § A.

Similarly, a review of case law in this area indicates that actionable, *i.e.*, unlawful, sexual favoritism typically involves favoritism based not simply on favoritism toward a paramour, but on "coerced sexual conduct," *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 908 (8th Cir. 2006), in other words, a situation in which an employee is given or offered preferential treatment in exchange for sexual favors. Nothing of the kind is alleged here. There is no allegation here that anyone asked plaintiff, or any other Humane Society employee, for sexual favors in exchange for preferential treatment.

The case law is also consistent with the EEOC's position concerning non-actionable conduct. In *DeCintio v. Westchester County Med. Ctr.*, 807 F.2d 304 (2d Cir. 1986), the Second Circuit rejected a Title VII claim brought by seven male employees who alleged that they had been unfairly disqualified from promotion so that their supervisor could promote a woman with whom he was romantically involved. In so ruling, the court stated that "[t]he proscribed differentiation under Title

VII ... must be a distinction based on a person's sex, not on his or her sexual affiliations." *Id.* at 306. The court reasoned that the male employees "were not prejudiced because of their status as males; rather, they were discriminated against because [the supervisor] preferred his paramour." *Id.* at 308.

Likewise, in a case similar to this one, *Krasner v. HSH Nordbank, AG*, 680 F.Supp.2d 502 (S.D.N.Y. 2010) (Lynch, C.J. sitting by designation), the court dismissed a claim against the male plaintiff's former employer, alleging a hostile work environment based in part on the plaintiff's male supervisor's alleged affair with a female employee. Stating that "what matters is 'how the employer would have treated the plaintiff had [ ]he been of a different sex,'" *id.* at 514 (quoting *Brown v. Henderson*, 257 F.3d 246, 254 (2d Cir. 2001)), the court concluded that "[n]othing in the facts alleged plausibly connects any of the actions taken against Krasner to his sex." *Id.* at 517. Rather, the court stated, "Krasner does not allege, and proffers no facts that remotely suggest, that a female supervisor in his position would not have experienced exactly the same consequences from [his supervisor's] preferential treatment of [his paramour]." *Id.*

Based on the allegations of the complaint, the court concluded that "[a] fair consideration of the harassment Krasner alleges he suffered demonstrates why courts–including the Second Circuit–routinely reject discrimination claims based on 'paramour preference.'" *Id.* (citing *DeCintio*, 807 F.2d 304)). Such claims, the court said, ignore the required causal factor, *i.e.*, that the plaintiff was subjected to a hostile environment because of the plaintiff's sex. That factor, the court stated, "plays a critical role–in conjunction with the other elements of a hostile environment claim–in ensuring that 'the federal courts [do not] become a court of personnel appeals.'" *Id.* at 519 (quoting *Alfano*, 294 F.3d at 377). The court concluded that "although Krasner's work environment may have

been unpleasant–even 'hostile' in ordinary parlance–his discrimination claim must be dismissed because the circumstances do not permit an inference that he was singled out for mistreatment because of his sex." *Id.* (internal quotations marks and alterations omitted).

The same reasoning applies here. Nothing in the complaint suggests that plaintiff would have been treated any differently had she been a man. Moreover, the facts alleged here do not even show that a fellow *employee* was given preferential treatment over plaintiff. Plaintiff alleges only that Smith's indulgent treatment of a *non*-employee–the donor–made plaintiff's job more difficult. She does not allege that she was treated less favorably than any other employee, male or female, for sexual reasons or otherwise. Her claim of sex discrimination must therefore be dismissed.

## V. Retaliation

Plaintiff's retaliation claim fails, for the simple reason that plaintiff never complained of unlawful discrimination. To state such a claim under Title VII, a plaintiff must allege facts tending to show that (1) she engaged in a protected activity; (2) her employer was aware of plaintiff's protected activity; (3) plaintiff suffered an adverse employment action; and (4) a causal connection existed between the protected activity and the adverse action. *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007); *Krasner*, 680 F.Supp.2d at 519.

In the case at bar, plaintiff does not allege that she engaged in protected activity. Her own allegations, and the documents she relies on, show instead that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex.

First, the mere fact that plaintiff used the term "hostile environment" in her email to her supervisor is not enough; the court must look at the substance of her complaint, not the terminology that she used. *See Sullivan v. Chappius*, ___ F.Supp.2d ___, 2010 WL 1816647, at *7 (W.D.N.Y. 2010) ("The mere insertion by plaintiff's attorney of the legal term of art 'hostile environment' in this claim does not render this a viable cause of action[ under the HRL], where the facts alleged here show no more than that plaintiff complained about matters falling completely outside the scope of the HRL"); *Fields v. Locke Lord Bissell & Liddell LLP*, No. 1:07-CV-2984, 2009 WL 2341981, at *16 (N.D.Ga. July 28, 2009) ("it is not enough for Plaintiff to allege merely that she used the word 'retaliation' and that, by using a particular Title VII 'buzzword,' her conversations with [her supervisor] automatically became protected activities under Title VII"); *cf. Brummell v. Webster Central School Dist.*, No. 06-CV-6437, 2009 WL 232789, at *6 (W.D.N.Y. Jan. 29, 2009) (employee is not required to use "legal terms or buzzwords" when complaining of discrimination, as long as she "complain[s] of discrimination in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of race, gender, national origin, or any other characteristic protected by Title VII").

In her May 30 email to Wright, plaintiff identified "three issues" that she said were creating a "hostile environment" for her. Two of those issues dealt with the problems plaintiff was having with Calandrillo, and the third involved the relationship between Smith and the donor. As to the latter, plaintiff complained that "[d]ecisions are made that are not in the best interest of the organization – specifically where money is spent and how employees are managed," because the donor was making decisions that should have been left to plaintiff. Dkt. #2 Ex. A.

It is obvious from that email itself, then, as well as from the other allegations of the complaint, that none of what plaintiff complained about had anything to do with unlawful discrimination. Thus, plaintiff did not engage in protected activity under Title VII, and there is no basis for a retaliation claim here. *See Krasner*, 680 F.Supp.2d at 520 ("Krasner admits that all of his pre-termination complaints ... addressed only [his supervisor's] affair with [a female employee], which he characterized as a violation of [the employer's] ethics policy, and the detrimental effects of this relationship on Krasner and on the department" in which he worked); *Sullivan*, 2010 WL 1816647, at *6 ("Plaintiff alleges only that he complained about 'the illicit affair' between [his supervisor] and plaintiff's secretary. He does not allege that he complained about any practices that were prohibited, or that he believed were prohibited, by the HRL, nor has he identified any such practices").

## VI. Human Rights Law Claims

Under 28 U.S.C. § 1367(c)(3), a district court may, but is not required, to decline to exercise its supplemental jurisdiction over a state-law claim if "the district court has dismissed all claims over which it has original jurisdiction ... ." In practice, where all federal claims are dismissed before trial, courts typically dismiss the state claims as well. *Marcus v. AT & T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). "Dismissal of the pendent state law claims is not, however, absolutely mandatory even where the federal claims have been dismissed before trial ... ." *Id.* (internal quotation marks omitted). *See also Schiffman v. Epstein*, No. 04 Civ. 2661, 2009 WL 1787760, at *7 (S.D.N.Y. June 23, 2009)

(stating that "[t]his preference [for dismissal of remaining state claims] is not an inexorable command").

Indeed, the Supreme Court has characterized as "purely discretionary" a district court's decision whether to exercise its supplemental jurisdiction over state-law claims, after dismissing all the claims over which the court has original jurisdiction. *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, ___ U.S. ___, 129 S.Ct. 1862, 1866 (2009) (citing 28 U.S.C. § 1367(c)). *See also Osborn v. Haley*, 549 U.S. 225, 245 (2007) ("Even if only state-law claims remained after resolution of the federal question, the District Court would have discretion, consistent with Article III, to retain jurisdiction"); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims"); *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006) ("Because we affirm the district court's dismissal of all of Schaefer's federal claims, on remand, the district court can exercise its discretion whether to invoke supplemental jurisdiction under 28 U.S.C. § 1367 over Schaefer's remaining state law claims").

It is clear, then, that "a district court is never required to relinquish jurisdiction over state law claims merely because the federal claims were dismissed before trial. The only requirement is that it make a considered determination of whether it should hear the claims." *Miller v. Herman*, 600 F.3d 726, 2010 WL 1068227, at *10 (7th Cir. 2010) (citations omitted). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity' in deciding whether to exercise jurisdiction." *Kolari v. New*

*York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[N]o single factor is dispositive," and the decision whether to retain jurisdiction over the state-law claims must be made "in light of the specific circumstances of the case at bar." *Brookshire Bros. Holding, Inc. v. Dayco Products*, Inc., 554 F.3d 595, 602 (5th Cir.), *cert. denied*, 129 S.Ct. 2865 (2009).

In a recent case similar to the one at bar, this Court, after dismissing the plaintiff's federal equal protection claim against his state employer, chose in its discretion to exercise its supplemental jurisdiction over the plaintiff's HRL claim, and to dismiss that claim as well. *See Sullivan*, 2010 WL 1816647, at *5-*7.

I make the same ruling in t his case,  finding as I did in *Sullivan*, that "[t]his course of action will best serve the interests of judicial economy, convenience, and fairness to the parties, and will not implicate any particular concerns over comity, since the application of state law to the facts alleged here is a relatively simple and straightforward matter." *Id.* at *5.  *See also Mauro v. Southern New England Telcomms., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000) (upholding district court's decision to retain jurisdiction over state claims after sole federal claim had been dismissed, where declining jurisdiction over state claims "would have furthered neither fairness nor judicial efficiency" and the state causes of action did not require district court "to resolve any novel or unsettled issues of state law").

As noted earlier, age discrimination claims brought pursuant to the HRL are analyzed under the same framework as ADEA claims.  *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 n.3 (2d Cir. 2007); *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.), *cert.*

*denied*, 534 U.S. 993 (2001). Likewise, sex discrimination claims under the Title VII and the HRL are analyzed under the same standard, *see Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir. 2000); *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997); *Bielski*, 674 F.Supp.2d at 420, as are Title VII and HRL retaliation claims. *See Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Peterson v. City of Rochester*, No. 06-CV-6003, 2010 WL 1408013, at *5 (W.D.N.Y. Mar. 31, 2010).

For the reasons stated with respect to plaintiff's Title VII and ADEA claims, I find plaintiff's HRL claims to be without merit. Those claims are therefore dismissed as well.


### VII. Plaintiff's Motion to Amend/Correct the Complaint

Plaintiff has filed a cross-motion for leave to amend the complaint. Specifically, she seeks to (1) add factual allegations in support of age discrimination claims; (2) withdraw Claims 2 and 4; and (3) correct the caption of the complaint to identify the defendant as "Lollypop Farm, the Human [sic] Society of Greater Rochester." Dkt. #7-2 ¶ 8. As noted, the Court granted the motion to withdraw Claims 2 and 4, and dismissed those claims at oral argument.

The factual allegations that plaintiff wishes to add are those relating to the termination of two other employees over the age of forty, and plaintiff's replacement by a woman in her thirties. The Court has already considered those allegations for the purpose of evaluating plaintiff's age discrimination claim, and found them insufficient to support that claim.

It is well established that a district court may deny leave to amend where the amendment would be futile. *See Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009); *McCarthy v. Dun &*

*Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *Libbett v. Doody*, 686 F.Supp.2d 271, 279 (W.D.N.Y. 2010).  Amendment would be futile if the proposed amended claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).  *Lucente v. I.B.M. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  Since plaintiff's age discrimination claim could not survive a motion to dismiss, even with the added allegations, plaintiff's motion is denied.  In addition, plaintiff's motion to correct the caption of the complaint is denied as moot.

## CONCLUSION

Defendant's motion to dismiss the complaint (Dkt. #2) is granted, and the complaint is dismissed.

Plaintiff's cross-motion for leave to amend and correct the complaint (Dkt. #7) is granted in part and denied in part.  Plaintiff's motion to withdraw Claims 2 and 4 is granted, and those claims are dismissed.  In all other respects, plaintiff's motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      July 21, 2010.